IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCIE FUERSCHBACH,

        Plaintiff,

v.                                          No. CIV 03-540 RHS/LFG

SOUTHWEST AIRLINES CO.,
CITY OF ALBUQUERQUE,
DUANE HOPPE, ELDON MARTINEZ,
MICHAEL SANTIAGO, and
TINA MARIE TAPIA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendant Southwest Airline Co.'s Motion for Protective Order ("Southwest Airlines" or "Defendant") [Doc. No. 53], filed November 24, 2003, and Plaintiff Marcie Fuerschbach's ("Fuerschbach" or "Plaintiff") Motion to Compel [Doc. No. 61], filed December 4, 2003. Both motions are fully briefed [Doc. Nos. 69, 70], and no oral argument is necessary. After careful consideration of the pleadings, attachments and pertinent law, the Court concludes that Defendant Southwest Airline's Motion for Protective Order should be granted in part and denied in part, and that Plaintiff's Motion to Compel should be denied. The Court will conduct an *in camera* inspection of documents identified by Plaintiff that have not been produced or listed in Defendant's privilege log. The Court's reasoning follows.

1

**Background**

Plaintiff's lawsuit arises out of a "prank" related to her passing the probation period of her employment with Southwest Airlines. In late 2001, Southwest Airlines hired Fuerschbach as a customer service representative at its Albuquerque's airport location. August 18, 2002 allegedly marked the end of Fuerschbach's probationary employment period, which she had passed. According to the First Amended Complaint, on August 18, two uniformed City Aviation police officers (at the bequest of some of her coworkers) approached and handcuffed Fuerschbach at work, informing her that there was an outstanding warrant for her arrest. Apparently not knowing that the "arrest" was a prank, Fuerschbach began to cry and shake uncontrollably when one of the officers told her he needed to confiscate Fuerschbach's airport badge and keys. Soon after being handcuffed and taken away from the Southwest Airlines' ticket counter, a coworker congratulated Fuerschbach for passing her probation period. A number of Southwest Airlines employees then began to clap and congratulate Fuerschbach, who was freed by the officers. Fuerschbach alleges she was "extremely distraught" by the incident and contends that her embarrassment, degradation and humiliation continued. [Doc. No. 18, First Amended Complaint.]

In her First Amended Complaint for Damages, Plaintiff sets forth claims of unlawful seizure, detention and arrest under § 1983, civil conspiracy, false imprisonment, false arrest, assault and battery, defamation by slander, and intentional infliction of emotional distress. She seeks an award of punitive damages against Southwest Airlines, based on her contention that Southwest allowed and encouraged its employees to haze and mistreat new employees when the new employees completed their probationary period. Fuerschbach also seeks punitive damages against the City based *inter alia* on the officers' actions in carrying out the gag arrest.

I.      **DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Fuerschbach seeks to depose three Southwest officers: Colleen Barrett – President and Chief Operating Officer, Beverly Carmichael – Vice President for People, and Mike Hafner – Senior Director of Ground Operations. All three are employed with Southwest Airlines, and live and work in the Dallas, Texas area. Southwest Airlines requests that the Court enter a Protective Order precluding Plaintiff from taking the depositions of these three officers, whom Defendant characterizes as high level corporate officials who occupy positions at the "apex" of Southwest Airlines' corporate structure. Plaintiff claims that each of the officers has unique personal knowledge concerning the events at issue and urges that short depositions should be permitted of all three employees.

   A.      *Pertinent Legal Standard*

Rule 26(b)(1) permits parties to obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26. The Court reviews discovery requests with the liberality contemplated by the federal rules. Discovery is designed to "make a trial less a game of blind man's buff (sic) and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958).

Over the years, rule changes have enabled and required courts to keep a tighter rein on the scope and extent of discovery. Fed.R.Civ.P 26 advisory committee's note (1983 and 2000 Amendments). Some of the rule modifications were designed to "involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed.R.Civ.P. 26(b)(1) advisory

committee's note (2000 Amendments). "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses . . . ." Id.

Rule 26(c) permits the Court to enter a Protective Order protecting a party or person from "annoyance, embarrassment, oppression or undue burden or expense." "Courts have granted protective orders for high-level executives where a party seeking to take a deposition had not yet attempted to obtain information from lower level executives, . . . where high-level executives plainly had no knowledge of the facts, . . . or where the deposition was solely sought to harass the executive." General Star Indem. Co. v. Platinum Indem. Ltd., 210 F.R.D. 80, 82-83 (S.D.N.Y. 2002) (internal citations omitted). In determining whether to issue a protective order, the Court should consider whether the high level executive has unique personal knowledge about the controversy, the potential for harassment, the potential disruption of business to the company and whether other lower-level witnesses may have access to the same information. Id.; Folwell v. Hernandez, 210 F.R.D. 169, 173 (M.D.N.C. 2002); Baine v. General Motors Corp., 141 F.R.D. 332, 334 (M.D. Ala. 1991).

**B.**     *Analysis*

Plaintiff contends that she should be allowed to depose Ms. Carmichael since Southwest Airlines identified Carmichael in its Rule 26(a)(1) disclosures as a witness who will testify at trial. The Court agrees with Plaintiff and denies Defendant's motion for protective order as to Ms. Carmichael. High-ranking officials are not automatically immune from discovery. General Star Indem., 210 F.R.D. at 83. This is particularly true here, where the official has been identified by the

company's attorney as a will-call witness. Thus, Plaintiff may proceed to depose Ms. Carmichael at a time convenient to all parties.

The Court, however, agrees with Southwest Airlines as to the other two high-ranking officers, Ms. Barrett and Mr. Hafner, and will enter a protective order as to those two depositions. Plaintiff has not convinced the Court that either Ms. Barrett or Mr. Hafner has unique personal knowledge of the facts regarding the incident involving Fuerschbach. Defendant did not identify Ms. Barrett or Mr. Hafner as witnesses in this case, but did attach an affidavit[1] from an employee in its legal department stating that neither Ms. Barrett nor Mr. Hafner had personal knowledge of the underlying incident at issue. [Ex. A, attached to Defendant's Memorandum in Support of Motion.] In addition, with the exception of Bill Showalter, Albuquerque station manager, Plaintiff did not attempt to depose any of the lower level supervisors who may have more direct knowledge of the incident. Moreover, the fact that Mr. Hafner may have attended a meeting on September 30, 2002, concerning Plaintiff and this incident, does not convince the Court that he should be deposed when Plaintiff, Ms. Carmichael, Mr. Showalter and others, who have been or could be deposed, were present at the meeting as well. [Ex. B, p. 306, attached to Defendant's Memorandum of Support of Motion.] Finally, because Ms. Barrett and Mr. Hafner do not appear to have unique personal knowledge of the incident, the Court concludes that the proposed depositions are potentially harassing and potentially disruptive to Southwest Airlines' business.

---

[1] Affidavits from Ms. Barrett and Mr. Hafner stating that they lacked relevant knowledge would have carried more weight. *See* General Star Indem., 210 F.R.D. at 83 (party moving for protective order typically provides an affidavit from the person seeking to avoid being deposed).

For all of these reasons, Southwest Airlines Motion for Protective Order as to Ms. Barrett and Mr. Hafner will be granted.[2]

## II. **PLAINTIFF'S MOTION TO COMPEL**

Fuerschbach seeks to compel Southwest Airlines to respond to her document requests for "any and all documents" concerning Southwest Airlines' policies in favor of or against pranks, tricks or jokes played on its employees, including policies, "any and all internal memoranda or correspondence" relating to pranks at work, etc., "any and all documents" concerning complaints to Southwest Airlines as to such pranks, and "any and all documents" concerning any such pranks, etc. [Doc. No. 61, Ex. A.] The document requests are limited in time by a period of five years, but are not restricted to Southwest Airlines' Albuquerque station. In other words, Plaintiff seeks to compel nationwide information from Southwest as to possible pranks, tricks or jokes played on any and all Southwest Airline employees at possibly 59 different airports in 31 different states.

Plaintiff argues primarily that the document requests are relevant to her claim for punitive damages as the requested information may demonstrate that Southwest Airlines allowed and even encouraged its employees to participate in hazing and mistreatment of new employees who completed their probationary period. Plaintiff contends that such information would also show that Southwest Airlines knew that its employees did not welcome such antics. [Doc. No. 61, p. 3.]

Southwest Airlines objected to producing all of the requested documents on the grounds of over breadth, undue burden, and harassment, as well as because the terms "pranks, tricks or jokes" are vague and ambiguous and some of the requested prank information is not sufficiently similar to

---

[2]Of course, should Southwest Airlines supplement its disclosures and list Ms. Barrett or Mr. Hafner as trial witnesses, Plaintiff may seek, at that time, to take their out-of-time depositions.

the incident in question to be relevant. [Doc. No. 64, p. 3.] However, Southwest Airlines produced some of the requested information limited to its Albuquerque station for the period specified. Fuerschbach now demands that all of the requested documents be located and produced.

### A.     *Pertinent Legal Standard*

Rule 26 permits a court to limit discovery if the burden or expense of the requested discovery outweighs its likely benefit, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).   Indeed, the Court is given wide discretion in balancing the needs and rights of both parties in determining the scope of discovery. Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995).  After balancing the requesting party's needs for the discovery and the opposing party's right to be free from intrusive and burdensome discovery, a court may deny the request altogether, limit the discovery, or limit the manner in which such information will be disclosed. Koch v. Koch Industries, Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000); Burka v. U.S. Dep't of HHS, 87 F.3d 508, 517 (D.C.Cir. 1996).

The Court is cognizant that discovery typically is not narrowly circumscribed in employment discrimination cases.  *See* Rich v. Martin Marietta, 522 F.2d 333, 343-44 (10th Cir. 1975). However, this is not an employment discrimination case.  Moreover, even in employment discrimination cases, the "most natural focus" for determining the scope of discovery in non-class complaints is "the employing unit or work unit." Mackey v. IBP, Inc., 167 F.R.D. 186, 195-96 (D. Kan. 1996) (internal citation omitted); Gheesling v. Chater, 162 F.R.D. 649, 650 (D. Kan. 1995). *See also* Joslin Dry Goods co. v. EEOC, 483 F.2d 178 (10th Cir. 1973) (in disparate impact case,

Tenth Circuit affirmed district court's order limiting discovery to single store where plaintiff worked rather than permitting broader discovery company-wide to all stores). That focus may be expanded, however, if the plaintiff can demonstrate that the proposed discovery is "particularly cogent" to the matter. Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir.), *reh'g denied*, 582 F.2d 966 (5th Cir. 1978).

In addition, with respect to the scope of discovery that is permissible to prove a claim of punitive damages, the United States Supreme Court recently criticized a plaintiff's use of a defendant's extraterritorial conduct as a means of bolstering arguments for punitive damages. State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 123 S.Ct. 1513, 1519, 1521-22 (2003). The Supreme Court concluded, *inter alia*, that it was error to award damages that might punish and deter conduct that bore no relation to those plaintiffs' harm. Id., 123 S.Ct. at 1523.

### B.    *Analysis*

Here, Plaintiff requests nationwide information from Southwest Airlines regarding any and all pranks, tricks, and jokes that employees in any of Defendant's locations may have played on other employees in relation to celebrations of an employee's completion of probation, anniversary of hire, promotion or birthday. [Doc. 61, Ex. C.] Plaintiff argues that such information is relevant to her claim against Southwest Airlines for punitive damages. However, she provides no legal authority for the proposition that nationwide discovery or conduct is appropriate to support a claim of punitive damages, and as noted, the Supreme Court's decision in Chapman refutes Plaintiff's argument.

Here, the single incident in question occurred at Southwest Airlines' Albuquerque station. It involved Albuquerque Southwest Airlines' employees. While there may be a history of pranks and

8

gags at Southwest Airlines, the "past practices" referred to in email communications [Doc. 68, Exs. 3, 4] appear to refer to pranks at the Albuquerque station.

In addition, Southwest Airlines provided affidavit testimony that a response to the proposed discovery request would require Southwest Airlines to check the individual files of over 35,000 employees, since there is not a single central repository for such information. [Doc. No. 64, Ex. A..] Southwest Airlines estimated that if a review of each file took only 30 minutes, a minimal response to the request would take 17,500 hours, or more than two years. [Id.]

After careful consideration of the needs of this case, the importance of issues at stake in this lawsuit, and the importance of the proposed discovery in resolving the issues, the Court concludes that the requested nationwide discovery is over broad and unduly burdensome. Indeed, the Court finds that, under the circumstances of this case, the probative value of permitting the proposed extensive, countrywide discovery, in the absence of more of a showing of particularized need by Fuerschbach, is greatly outweighed by the significant burden on Southwest Airlines of gathering and producing the information. Thus, Plaintiff's motion to compel will be denied. However, to the extent that Southwest Airlines has not fully responded to the discovery requests, with respect to the Albuquerque station, it should do so.

### C.   *In Camera Review of Documents*

In Plaintiff's reply brief, she raises an additional issue with respect to Bates-numbered documents that apparently were not produced by Southwest Airlines and not included in its privilege log. Fuerschbach lists those documents on pages 5 and 6 of her reply brief [Doc. No. 68] and notes that Southwest Airlines' counsel indicated that the missing Bates-numbers represent documents that are either irrelevant or related to personal information in supervisory personnel files. Fuerschbach

asks the Court to conduct an *in camera* review of the listed document numbers. The Court will grant this request and directs Defendant to provide the Court with the documents, as listed by Fuerschbach, within ten days of the filing date of this Order.

## **Conclusion**

For the reasons set out above, Defendant's Motion for Protective Order will be granted in part and denied in part. Plaintiff's Motion to Compel will be denied. However, Defendant will be directed to submit Bates-numbered documents as listed by Plaintiff to the Court for an *in camera* review.

IT IS THEREFORE ORDERED that:

(1) Defendant Southwest Airline Co.'s Motion for Protective Order [Doc. No. 58] is GRANTED in part and DENIED in part;

>   (a) the Court issues a Protective Order as to the proposed depositions of Colleen Barrett and Mike Hafner; and
>
>   (b) the Court directs that a deposition of Beverly Carmichael be scheduled as soon as practicable and at a time convenient for all parties;

(2) Plaintiff Marcie Fuerschbach's Motion to Compel [Doc. No. 61] is DENIED; and

(3) Defendant Southwest Airlines is directed to submit the documents listed by Plaintiff in her reply brief [Doc. No. 68] to the Court for an *in camera* inspection within ten days after entry of this Order.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge