IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCIE FUERSCHBACH,

    Plaintiff,

vs.                                                                       Civ. No. 03-540 RHS/LFG

SOUTHWEST AIRLINES CO., CITY OF
ALBUQUERQUE, DUANE HOPPE, ELDON
MARTINEZ, MICHAEL SANTIAGO, and
TINA MARIE TAPIA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants City of Albuquerque, Duane Hoppe and Eldon Martinez' Motion for Summary Judgment, filed January 22, 2004, [Doc. no.73], Plaintiff's Response to Defendants City of Albuquerque, Eldon Martinez, and Duane Hoppe's Motion and Memorandum Brief in Support of their Motion for Summary Judgment and Plaintiff's Counter Motion for Summary Judgment Against Hoppe and Martinez on Count I (Violation of 42 U.S.C. §1983), Count III (False Imprisonment), Count IV (False Arrest) and Count V (Assault and Battery) of Plaintiff's Amended Complaint, filed February 9, 2004. [Doc. No. 79] and Plaintiff's Motion for Summary Judgment Against Hoppe and Martinez on Count I (Violation of 42 U.S.C. §1983), Count III (False Imprisonment), Count IV (False Arrest) and Count V (Assault and Battery) of Plaintiff's Amended Complaint, filed February 25, 2004 [Doc. No. 98]. Having considered the pleadings, the exhibits and the entire record, the Court finds that

Plaintiff's motions for summary judgment are not well taken and will be denied and that Defendants' City of Albuquerque, Martinez, and Hoppe's motion for summary judgment is well taken and will be granted.

**Factual Background**

The following material facts are undisputed. Plaintiff was employed by Southwest Airlines ("SWA") as a customer service representative. Defendants Hoppe and Martinez were employed by the City of Albuquerque Aviation Department as full time law enforcement officers. SWA personnel requested that Hoppe and Martinez assist them in staging a mock arrest of Plaintiff to commemorate the completion of her probationary period which they agreed to do.

Plaintiff was working at the SWA ticket counter when she was told by one of the defendant law enforcement officers that she needed to go with him to answer some questions and she complied. She was handcuffed behind her back, walked twelve to fifteen feet towards the elevator and a SWA employee then told her "Congratulations for being off probation." The handcuffs were removed and several SWA employees and customers applauded.

Plaintiff was crying during and after the incident. She testified that she was embarrassed because she didn't get the joke and that she did not think it was funny. She subsequently consulted a psychologist who diagnosed her as suffering from post-traumatic stress disorder.

**Procedural Background**

Plaintiff filed this lawsuit against the City of Albuquerque, the two police officers, SWA and two SWA employees, alleging a federal claim for violation of her Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. §1983 (Count I) and state law claims for conspiracy (Count II), false imprisonment (Count III), false arrest (Count IV), assault and battery (Count V),

defamation by slander (Count VI) intentional infliction of emotional distress (Count VII) and punitive damages (Count VIII).    Defendants City of Albuquerque, Duane Hoppe and Eldon Martinez ("Airport Defendants") moved for summary judgment.  Plaintiff responded to the motion and filed a counter motion for summary judgment against defendants Hoppe and Martinez. That pleading was docketed as a response, not a summary judgment motion.  Plaintiff then filed a separate motion for summary judgment ( which was past the deadline for filing motions) and a response to that motion was filed.  The parties agreed to the late filing but no extension of the deadline was granted by the Court.

Although  Defendants Hoppe and Martinez did not file a formal response to Plaintiff's combined response/ motion for summary judgment, the issues which are the subject of both Plaintiff's and the Airport Defendants' motions have been exhaustively briefed by the parties. Regardless of how the clerk's office viewed the pleadings, the Court was aware that Plaintiff's initial  motion for summary judgment was timely filed.  Due to the procedural confusion that took place, it would be inappropriate to grant summary judgment against Hoppe and Martinez for failure to respond to Plaintiff's motion, particularly because  the issues presented in Plaintiff's motion were all fully discussed by the parties in relation to defendants' motion. The Court therefore finds that  extending the motions deadline to allow duplicitous argument is unnecessary. The Court will consider merits of Plaintiff's first motion for summary judgment [Doc. No. 79] and will deny Plaintiff's Motion for Summary Judgment against Hoppe and Martinez on Count I (Violation of 42 U.S.C. § 1983), Count III (False Imprisonment), Count IV (False Arrest) and Count V (Assault and Battery) of Plaintiff's Amended Complaint for Damages, filed February 24, 2004, [Doc. No. 98]  as untimely.

**Standard of Review**

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. ' " Muñoz v. St. Mary-Corwin Hosp., 221 F. 3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56( c)). The substantive law at issue determines which facts are material in a given case. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Id.  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. Id.

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. See Adickes v. S. H. Kress & Co., 398 U. S. 144, 157 (1970 ).  When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non-movant on an essential element of the non-movant's claim." Adler v.Wal-Mart Stores, Inc., 144 F. 3d 664, 671 (10th Cir. 1998). In such a situation, the moving party is entitled to judgment as a matter of law.

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. See McGarry v. Board of County Con'r of County of Pitkin, 175 F. 3d 1193, 1201 (10th Cir. 1999).   The party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set

forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. See Munoz, 221 F. 3d at 1164. Where the record taken as a whole could not lead a rational trier of fact to find for the non- moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U. S. 574, 587 (1986)(quoting First Nat. Bank of Arizona v. Cities Serv. Co., 391 U. S. 253, 289 (1968)), Harvey Barnett, Inc. v. Shidler, 338 F. 3d 1125, 1129 (10th Cir. 2003).

**1983 Claims Against Sgt. Hoppe and Officer Martinez**

Qualified Immunity Standard

Plaintiff alleges that Defendants Hoppe and Martinez violated her constitutional right to be free from unreasonable seizures and moves for summary judgment in her favor on this claim. The officers contend that they are immune from suit based on qualified immunity.

A government official is entitled to qualified immunity from civil damages when his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U. S. 800, 818 (1982). The Supreme Court clarified the qualified immunity analysis in Saucier v. Katz, 533 U. S. 194 (2001). The first question in the Saucier analysis is whether "[ t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?" Id. at 201. If a court finds that a favorable view of the facts alleged establishes a violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the defendants' alleged unlawful conduct. Id. If the Plaintiff does not satisfy either portion of the two pronged test, the Court must grant the defendant qualified immunity. Gross v. Pritle, 245 F.3d 1151, 1156 (10th Cir. 2001). Only if the plaintiff establishes both elements of the test

does the defendant bear the traditional burden of showing "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Albright v. Rodriguez, 51 F. 3d 1531, 1535 (10th Cir. 1995).

Fourth Amendment Claim

Plaintiff alleges that Defendants Hoppe and Martinez violated her Fourth Amendment right to be free from an unlawful arrest. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The constitutional validity of a warrantless arrest is analyzed under a probable cause standard. Beck v. State of Ohio, 379 U. S. 89, 91 (1964). A police officer's warrantless arrest is permissible if the officer has probable cause to believe that the person he or she is arresting has committed or is committing a crime. Romero v. Fay, 45 F. 3d 1472, 1476 (10th Cir. 1995). Probable cause exists only if the facts and circumstances within the arresting officer's knowledge, and of which he or she has reasonably trustworthy information, are sufficient to lead a reasonably prudent person to believe that the arrestee has committed or is committing an offense. Hunter v. Bryant, 502 U. S. 224, 228 (1991); Baptiste v. J.C. Penney Co., 147 F. 3d 1252, 1256 (10th Cir. 1998). When a warrantless arrest is the subject of a §1983 claim, the arresting officer is immune from suit if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. Hunter, 502 U. S. at 227; Baptiste, 147 F. 3d at 1256, (quoting Romero, 45 F. 3d at 1475). A law enforcement official who " 'reasonably but mistakenly conclude[s] that probable cause is present'" is entitled to qualified immunity. Hunter, 502 U. S. at 227 (quoting Anderson v. Creighton , 483 U. S. 635, 641 (1987)).

-6-

On August 18, 2002, the date of the incident, it was clearly established that a police officer violated an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer made a warrantless arrest without probable cause. <u>Olsen v. Layton Hills Mall</u>, 312 F. 3d 1304, 1312, (10th Cir. 2002) (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 7 (1985)). The officers knew they had no probable cause to arrest Plaintiff, however, this situation is unlike the usual Fourth Amendment case in that the officers never intended to arrest Plaintiff, but only intended to assist SWA in a prank to commemorate Plaintiff's successful completion of her probationary term of employment. The parties agree that the entire encounter took only a few minutes, that Plaintiff was actually placed in handcuffs for the length of time it took her to walk ten to fifteen steps to the end of the counter and that Sgt. Hoppe and Officer Martinez were courteous and professional. Although the Court finds that no actual arrest of Plaintiff occurred, it was reasonable for Plaintiff to believe that she was not free to decline the officer's requests or to terminate the encounter, and therefore Plaintiff's brief detention may constitute a seizure within the meaning of the Fourth Amendment. <u>See Florida v. Bostick</u>, 501 U.S. 429 (1991).

Fourteenth Amendment Claim

In order to conclude that Plaintiff's rights under this clause were violated, it is necessary to find that the officers' actions amounted to punishment and were not merely "an incident of some other legitimate governmental purpose" <u>Bell v. Wolfish</u>, 441 U.S. 520, 538, 99 S. Ct. 1861 (1979) and that the injury resulting from their actions was more than *de minimis*. <u>Riley v. Dorton,</u> 115 F.3d 1159, 1167 (4th Cir. 1997). Although the airport defendants claim that the prank arrest was reasonably related to a legitimate law enforcement purpose in maintaining good community

relationships with SWA and its employees, the Court does not view fostering "camaraderie ... among airport neighbors" to be a legitimate law enforcement purpose. Viewing the facts in the light most favorable to Plaintiff, the claim of post traumatic stress disorder claim meets the requirement for a greater than *de minimus* injury.

Clearly Established Right to be Free from Mock Arrest

Assuming, for the purposes of the second prong of the Saucier analysis, that the Airport Defendants' actions deprived Plaintiff of constitutional rights, the officers would still be entitled to a qualified immunity defense if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The law is clearly established when there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992). However, Plaintiff need not present an identical case to show the law was clearly established; instead, Plaintiff must show only that the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Horstkoetter v. Dep't of Pub. Safety, 159 F.3d 1265, 1278 (10th Cir.1998)(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In this case there was no Supreme Court or Tenth Circuit case holding that a mock arrest of an individual under the circumstances depicted here rose to the level of a constitutional violation. Although notice does not require that the very action in question has previously been held to be unlawful, it does require that "in the light of pre-existing law the unlawfulness must be apparent." Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct 1692 (1999). Plaintiff cites Amaechi

v. West, 237 F.3d 356 (4th Cir. 2001)(denying qualified immunity and rejecting argument that previously decided case must have held that barehanded penetration of female genitalia during pat down search was unconstitutional) and McMillian v Johnson, 88 F.3d 1554 (11th Cir 1996) (denying qualified immunity to officials who confined pretrial detainee on death row before his trial to punish him) in support of her argument that the precise conduct of Hoppe and Martinez need not have been previously held unlawful to defeat the defendant officers' claim of qualified immunity. These cases, in which the Court denied qualified immunity to officials who engaged in egregious conduct that was obviously constitutionally impermissible, are quite different from this case and are not persuasive on this point.

    The officers' detention of Plaintiff for a few minutes in a mock arrest at the request of her employer as part of an employment "celebration" and the instruction for her to walk ten or fifteen steps in handcuffs was inappropriate behavior, but whether or not the officers understood or reasonably should have understood their actions to be constitutional violations is an entirely different question. After the incident, Officers Hoppe and Martinez were instructed by their supervisors not to engage in such behavior in the future and if they chose to engage in such a prank again, the legal result might conceivably be different. However, given the lack of policies, procedures, and case law on the subject at the time of the incident, the Court cannot find that the officers knew or should have known that their conduct violated any clearly established federal law. The Court, therefore, finds that Officers Hoppe and Martinez are entitled to the qualified immunity defense and the §1983 claims against them will be dismissed.

**§ 1983 Municipal Liability Claims**.

Defendant City of Albuquerque asserts that Fuerschbach's claims against the City should be dismissed because the Complaint fails to allege that the allegedly unconstitutional actions were taken pursuant to a municipal policy or custom. A municipality cannot be held liable under § 1983 based on the doctrine of *respondeat superior.* Monell v. Dep't of Soc. Servs., 436 U. S. 658, 691 (1978). However, a local government may be held liable for actions that unconstitutionally implement or execute a policy statement, ordinance, regulation, or decision that has been officially promulgated or adopted by that body's officers or for constitutional deprivations based on governmental custom, even though not formally approved by the body's decision-making channels. Monell, 436 U. S. at 690-91.

In order to establish municipal liability under § 1983, the plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipality." See Seamons v.Snow, 206 F. 3d 1021, 1029 (10th Cir. 2000) (citing Pembaur v. City of Cincinnati, 475 U. S. 469, 480-83 (1986)). The Complaint does not allege the existence of a City policy, practice or custom that permitted unconstitutional mock arrests, rather Plaintiff argues that the city should be held liable for not having a policy concerning mock arrests. The Court cannot find municipal liability on that basis. Plaintiff has offered nothing that would indicate that any of the challenged actions were authorized or ratified by the City of Albuquerque and it is therefore is entitled to summary judgment on Fuerschbach's §1983 claims.  **State Law Claims**

The liability of the City of Albuquerque and its employees for statutory or common-law torts is limited by the New Mexico Tort Claims Act (NMTCA), N. M. Stat. Ann. §§ 41-4-1 to 41-4-29 (Michie 1978 & Supp. 2001).    Section 41-4-4( A) of the NMTCA grants governmental immunity from liability for any tort to governmental entities and public

employees acting within the scope of their duties, except as waived by Sections 41-4-5 to 41-4-12 of the NMTCA, Weinstein v.City of Santa Fe, 121 N.M. 646, 648, 916 P. 2d 1313, 1315 (1996). The waiver of immunity applicable to law enforcement officers while acting within the scope of their duties contained in Section 41-4-12 is limited to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico.  In her Complaint, Plaintiff asserts tort claims under New Mexico law for civil conspiracy, assault, battery, false imprisonment, false arrest, and defamation by slander.

 Count  III, False Imprisonment and Count IV, False Arrest

False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so. Romero v. Sanchez, 119 N. M. 690, 693, 895 P. 2d 212, 215 (1995) (quoting N. M. Stat. Ann. § 30-4-3 (Michie 1994)); see also Mendoza v. K-Mart Inc.,  587 F. 2d 1052, 1058 (10th Cir. 1978) ( One basic element of . . . a [false imprisonment] claim is that the plaintiff be confined or restrained in some unlawful way by the defendant.)  Unlawful arrest or detention has similar requirements. Romero, 119 N. M. at 693, 895 P. 2d at 215.  The officers lacked the requisite knowledge that they had no lawful authority to briefly restrain Plaintiff as part of a prank at the request of SWA. A good faith and reasonable belief in the lawfulness of the action taken is a  defense to a civil wrongful arrest or a false imprisonment suit and the officers are entitled to summary judgment on these claims.

Count V  Assault and Battery

In her Complaint, Fuerschbach also alleges that Hoppe and Martinez committed the state law torts of assault and battery. Under New Mexico law, for there to be an assault, there must be an act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery. Baca v. Velez, 114 N. M. 13, 15, 833 P. 2d 1194, 1196 (Ct. App. 1992) ( citation omitted).   To prevail on a claim for battery, Plaintiff must prove by a preponderance of the evidence that the officers (a) acted intending to cause a harmful or offensive contact, or an imminent apprehension of such a contact, and (b) an offensive contact with the person directly or indirectly resulted. State v. Ortega, 113 N.M. 437, 827 P.2d 152 (Ct. App. 1992) (citing Restatement (2nd ) of Torts §18 (1965)).

Plaintiff's deposition testimony that the officers were courteous and professional and that they did not behave in an angry manner does not support her assault claim.  There is also no evidence that the officers intended to cause harmful or offensive contact.   Her statement that one of the officers "physically touched" her when he put on the handcuffs is not sufficient to support her battery claim.  Plaintiff's assault and battery claim will therefore be dismissed.

Count VI  Defamation

The parties filed a Stipulated Motion to Dismiss Count VI: Defamation by Slander on March 5, 2004. [Doc. No. 101]  This claim will be dismissed against all parties in a separate Order.

Count VII  Intentional Infliction of Emotional Distress

The Airport Defendants argue that the City and its employees are immune from suit for intentional infliction of emotional distress because there is no waiver of immunity for this claim

under the NMTCA.  Plaintiff responded that she does not assert this claim against the Airport Defendants.  A careful reading of the Complaint indicates that the Airport Defendants' assumption that they might be included in this claim is not entirely without justification.  Although Plaintiff's Response indicates that it may be unnecessary, for purposes of clarity the Court will briefly address this issue.

No waiver of sovereign immunity exists for this tort claim.  See Garcia-Montoya v. State Treasurer's Office, 130 N. M. 25, 43, 16 P. 2d 1084, 1102 (2001) (upholding the district court's conclusion that state employees were immune from suit for intentional infliction of emotional distress.)  Defendants are entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

Count II  Conspiracy

In order to defeat Defendants' summary judgment motion regarding the claim of civil conspiracy alleged in Plaintiff's Complaint, Plaintiff must come forward with evidence to show: "(1) that a conspiracy between two or more individuals existed;  (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and  (3) that the plaintiff was damaged as a result of such acts."  Bauer v. College of Santa Fe, 134 N.M. 439, 78 P.3d 76 (Ct. App. 2003), quoting Ettenson v. Burke, 130 N.M. 67, 17 P.3d 440 (Ct. App. 2000). Plaintiff has failed to do so. As explained in the above analysis of Plaintiff's civil rights claims, the undisputed facts and evidence of record do not support a reasonable inference that the brief detention of Plaintiff by the Albuquerque Aviation Police  was  "a wrongful act" within the meaning of the civil conspiracy. Thus, Plaintiff cannot meet her burden of showing each element

required to establish this cause of action against the Airport Defendants and they are entitled to summary judgment on this claim.

City Liability for State Claims

As discussed above, the Court finds that Defendants Hoppe and Martinez did not commit any tort against Plaintiff, therefore summary judgment must be granted to Defendant City of Albuquerque on these claims.

Count VIII  Punitive Damages

Punitive damages are not recoverable from the City of Albuquerque, see City of Newport V. Fact Concerts, 453 U.S. 247 (1981), but they may be awarded against the officers under §1983 for action taken in their individual capacities if the conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others.  Jolivet v. Deland, 966 F. 2d 573, 576 (10th Cir. 1992).  That is not the case here.  Plaintiff's punitive damage claims against the Airport Defendants will be dismissed.

    **IT IS THEREFORE ORDERED** that:

1. Plaintiff's Counter Motion for Summary Judgment against Hoppe and Martinez on Count I (Violation of 42 U.S.C. § 1983), Count III (False Imprisonment), Count IV (False Arrest) and Count V (Assault and Battery) of Plaintiff's Amended Complaint for Damages,  filed February 9, 2003, [Doc. No. 79 ] is **DENIED**.

2. Plaintiff's Motion for Summary Judgment against Hoppe and Martinez on Count I (Violation of 42 U.S.C. § 1983), Count III (False Imprisonment), Count IV (False Arrest) and Count V (Assault and Battery) of Plaintiff's Amended Complaint for Damages, filed February 24, 2004, [Doc. No. 98] is **DENIED** as untimely.

3.  Defendants City of Albuquerque, Eldon Martinez, and Duane Hoope's Motion for Summary Judgment [Doc. No. 73] is **GRANTED** and Plaintiff's claims against these defendants are **DISMISSED WITH PREJUDICE**.

                                                                          _Robert Hayes Scott_
                                                                          ROBERT HAYES SCOTT
                                                                          UNITED STATES MAGISTRATE JUDGE